Dillon, J.
Each of these cases involving the same question is presented to the court upon the sufficiency of the answers filed. It might be pertinent to inquire whether or not some of the denials of the answer should not be examined by the plaintiff as to whether any material ■ allegations of the petition are denied and which will not be discussed on my consideration of this demurrer. I assume that the denials that the plaintiff has any easement in the soil in front of their premises and that the ditch and conduit when constructed will interfere with the plaintiff’s enjoyment of the premises and the further denial that any damage of any kind will result to the plaintiff, are legal conclusions and not intended to be considered by me upon this dejnurrer, and therefore I shall as briefly as possible confine my *258 self to the main question which counsel have presented to me.
The dedication of the street in question to the municipality of the city of Columbus in law gave this street property to the city in trust for street purposes. . The lot owner in addition to the ordinary rights of the public has special easement and special privileges for the use of his lot, not only for ingress and egress, but embracing perhaps every right not inconsistent with this paramount right of the city to hold and use this street in trust for street purposes. The vacation or abandonment of the same by the city puts the entire title or fee of the lot in the lot owner.
With this fundamental principle of law before us, we come to the great variety of opinions which have been adopted by the various Supreme Courts .of the states of the Union as to what particular things are embraced in this trust of the city or in what may be termed street purposes.
As to the right of the defendant to lay a conduit for telephone purposes there is no question, and that question can not be involved here. That right has been conferred upon it by the state, as well as by the municipality itself; the question is whether or not in exercising that right, it must in the present instance first resort to eminent domain, or, in -other words, whether or not it violates any property right of the plaintiff in using a space a few feet cube through the soil in front of the plaintiff’s property.
I shall not review the eases which have been presented,'bearing on this subject. Some of the courts have construed the original dedication for street purposes so strictly that they could only embrace those purposes which were in the minds of the people themselves at the time of the dedication of the street. Manifestly, this limitation was incorrect. The dedication is for the uses and purposes of the street as the same at that time are contraed to exist in legal contemplation, the law itself contemplating the things, purposes and uses for which that street was dedicated. Without this same construction, as a matter of law, our streets and alleys would remain confined to the original village purposes with the ox cart as the only means of travel, and with every other means barred. The *259 broadest view taken by some courts is that streets and alleys in legal acceptation and contemplation of the purposes for which they are dedicated, were for all general public uses for individual comfort. This would embrace all those purposes and conveniences which the modern society and civilization demand, such as the use of the street for water pipes, for gas, for electricity, for telephone, for hot water, and in some communities for fresh and cooled air, and with no limitation as to future demands of the public in the progress of civilization and public comforts. Probably the most recent discussion of this question will be found in Mordhurst v. The Ft. Wayne & S. W. Traction Valley, recently decided by the Supreme Court of Indiana, and which may be found in 71 N. E. Rep., 42.
Counsel for the defendant very logically, it seems to me, put the question on page 11 of their .brief, and that is this:
“Is the use of the highway for the purpose of a telephone line within the scope of the original condemnation of the land or does a telephone line along a street constitute a new servitude-or burden upon the soil?”
I feel, however, that it is not permitted me to give my opinion upon all the questions presented in the very comprehensive brief of defendant’s counsel. The limitation is upon this court to confine itself to the ascertainment and declaring of the law as it exists in this state. I conceive it the special privilege and province of counsel for defendant to present in ex,tenso much of the argument of their brief to the tribunal whose special prerogative and privilege it is to modify or reverse the former policy of the state on this question.
These distinctions of uses of the street are many of them exceedingly technical and almost artificial,
On the question of street railways we find at pages 267 and 268, et seq., of Lewis on Eminent Domain, a discussion of the author' on the doctrine that a street railroad is a legitimate street use provided the road is devoted exclusively to street passenger traffic, but that if it used a car exactly the same size and dimension in which baggage is carried, such use would be an additional burden. Doubtless the logic of this distinction of the courts was that the carrying of baggage or freight was *260 not a legitimate street use, and yet it must be confessed that people in all times have had the perfect right to haul freight, hay, grain and baggage in ordinary vehicles over the same street. And the author further says:
“A review of cases shows how conflicting and irreconciliable are the authorities. The weight of authority is that a street passenger railroad laid on the surface or established grade of a street is the legitimate street use, while all other railroads are not. But what rational basis is there for a distinction between freight and passenger traffic? It can not be denied that streets and highways have been established as much for the transportation of freight as for the movement of persons. It is a distinction which can not be founded upon the nature and use of streets. Nor can any logical distinction be made between local and long distance traffic.”
Upon this same line of argument, it might well be said that the use of the sub-soil of a street for the conveying of communication between the citizens of a city is much less an interference with the rights of an abutting lot owner than laying a street car track on the surface of the soil, and it might be further well argued that in dedicating a street to the public, the expression “street purposes” might well include public purposes which of necessity and convenience should go along that street, whether it be the mere moving of persons, the moving .of traffic or the conveyance of the necessities and conveniences of life.
Recurring to our own state and its declared policy upon this subject, it must be admitted that the law seems now settled and from it we deduct two legal conclusions. First, that among the rights of an abutting lot owner consist the right to the sub-eoil in front of his house except as it may be needed for street purposes. And second, that the use of that same property beneath the surface of the street for the purpose of conveying telephonic communications and of laying wires for that purpose, is not embraced in the .original dedication of the street. As the language is used by Judge Spear in the Callen ease, “It is wholly for private use. Hence,’ it is not a street purpose. ’’
Barton Griffith, for plaintiff.
F. A. Davis, for defendant-
I have arrived, therefore, at the same conclusion as to the Ohio law upon this subject as my associate in the case of Federal Gas & Fuel Company v. Townsend, 1 N. P.—N. S., 289, and the demurrers to the answers therefore will be sustained. Exception noted for counsel.
If counsel for the defendant wish to amend, ten days will be given for that'purpose.